## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **Christopher R. Murray,** | § § § | |
| **Chapter 7 Trustee,** | § § | |
| **v.** | § § | **Civil Action No.   22-01670** |
| **Vinson & Elkins LLP,** | § § § | |
| **Defendant.** | § § | |

### TRUSTEE'S COMPLAINT

Christopher R. Murray, the Chapter 7 Trustee for Q'Max America Inc. ("QAI"), and Anchor Drilling Fluids USA, LLC ("Anchor"), and for the Bankruptcy Estate of Q'Max America Inc., and Anchor Drilling Fluids USA, LLC, files this Original Complaint against Defendant Vinson & Elkins LLP ("V&E").[1]

### SUMMARY OF COMPLAINT

1.     This action seeks to avoid and recover fraudulent and preferential transfers made by Debtor QAI to Defendant V&E between May 24, 2018, and May 24, 2020 (two (2) years prior to the filing of the above-styled bankruptcy case). Debtor QAI made transfers of at least $486,000.00 during that time to, and for the benefit of, Defendant V&E by way of a money transfer at a time when Debtor QAI was insolvent. The transfers were paid pursuant to legal services provided to non-party Pareto Securities Inc. ("Pareto") for which non-party, and 100% owner of Debtor QAI, Q'Max Solutions, Inc. ("QSI"), agreed to pay.

---

[1] Citations to the Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC's bankruptcy case, Case No. 20-60030 ("Bankruptcy Case") will be "Bankr. ECF No. 1."

2.      The Trustee may avoid and recover these payments as fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code.

3.      Debtor QAI had no legal obligation to make these transfers and received no benefit from making any of these transfers.

## JURISDICTION, VENUE & AND CONSTITUTIONAL AUTHORITY

4.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1334.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1409.

6.      The Trustee consents to entry of a final judgment by this Court in this matter.

## PARTIES

7.      Plaintiff is the duly appointed chapter 7 trustee for the Bankruptcy Estate of Debtor QAI. Plaintiff may be served with pleadings and process in this case through its undersigned counsel.

8.      Defendant Vinson & Elkins LLP is a Limited Liability Partnership organized under the laws of the State of Texas and may be served at its principal place of business, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, or wherever it may be found.

## STATEMENT OF FACTS

9.      Debtor QAI was an independent oilfield services company focused on providing drilling fluids and solids control services to national and independent oil companies. Debtor QAI was based in Houston, Texas.

10.      Debtor QAI failed to make payments on debt as it became due in early 2018. Indeed, Debtor QAI was making late payments to vendors from February 2018 onward. These late payments became progressively later over time.

11.    On May 24, 2020 ("Petition Date"), Debtor QAI filed a voluntary Chapter 7 petition for bankruptcy under title 11 of the Bankruptcy Code, commencing bankruptcy case number 2-60030 in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. On the same day, Debtor Anchor filed a voluntary Chapter 7 petition commencing bankruptcy case number 20-60031 in the same court. Plaintiff was appointed as the chapter 7 trustee for both.

12.    On May 27, 2020, the bankruptcies were ordered combined for joint administration.

13.    Debtor QAI is owned by its parent corporation, QSI.

14.    QSI entered into an agreement with non-party Pareto Securities, Inc. ("Pareto"), on January 22, 2019, in which QSI agreed to pay the legal fees incurred by Pareto from Defendant V&E. *See* Ex. 1 at § 2(b) (providing QSI will be responsible for up to $400,000 in legal fees incurred by Pareto). Through an amendment to the aforementioned agreement dated May 8, 2019, QSI agreed to pay an additional $400,000 in legal fees (for a total of $800,000) incurred by Pareto from Defendant V&E. Ex. 2 (providing QSI will be responsible for up to $800,000 in legal fees incurred by Pareto).

15.    While Debtor QAI was struggling financially, it paid for Defendant V&E's legal services that QSI, not Debtor QAI, was obligated to pay on behalf of Pareto. In other words, QSI was using Debtor QAI's accounts to pay for legal services that were of no benefit to Debtor QAI.

16.    Simply put, QSI directed Debtor QAI to pay for legal services provided to a wholly unrelated third party, Pareto, which Debtor QAI had no legal obligation to pay, at a time when Debtor QAI was already unable to pay its debts as they came due.

17.    The legal services payments made by Debtor QAI were significant. In total, Debtor QAI paid Defendant V&E at least $486,000.00 for legal fees incurred by Pareto:

| Payment Date | Payment To | Payment Amount |
|---|---|---|
| 9/19/2019 | V&E | $25,000.00 |

| | | |
|---|---|---|
| 10/4/2019 | V&E | $25,000.00 |
| 10/17/2019 | V&E | $100,000.00 |
| 11/7/2019 | V&E | $50,000.00 |
| 11/14/2019 | V&E | $25,000.00 |
| 12/2/2019 | V&E | $25,000.00 |
| 12/6/2019 | V&E | $25,000.00 |
| 12/12/2019 | V&E | $25,000.00 |
| 12/19/2019 | V&E | $25,000.00 |
| 12/26/2019 | V&E | $25,000.00 |
| 1/17/2020 | V&E | $25,000.00 |
| 1/31/2020 | V&E | $25,000.00 |
| 2/18/2020 | V&E | $25,000.00 |
| 2/21/2020 | V&E | $25,000.00 |
| 3/12/2020 | V&E | $25,000.00 |
| 4/3/2020 | V&E | $11,000.00 |
| | **Total:** | **$486,000.00** |

18.     Because Defendant V&E was engaged by, and provided services to, Pareto, for which QSI, not Debtor QAI, agreed to pay, all payments made by QAI to Defendant V&E were improper, as Debtor QAI did not benefit from any such services provided by Defendant V&E to Pareto.

19.     Despite knowing it did not benefit from the services provided by Defendant V&E to Pareto, and despite knowing it was not obligated to proffer any payments to Defendant V&E because (1) no invoices were submitted to it, and (2) no contract between Defendant V&E, or non-party Pareto, and Debtor QAI existed, as the contract for legal services was entered into, by, and between Pareto and Defendant V&E, for which services QSI agreed to pay on behalf of Pareto, Debtor QAI nonetheless transferred $486,000.00 in payments to Defendant V&E, which it knew would prevent this money from going to its true creditors.

CAUSES OF ACTION

COUNT 1
FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 548 AND 550

20.     Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

21.     The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) because Debtor QAI made these transfers with actual intent to hinder, delay, or defraud its creditors.  Indeed, numerous badges of fraud exist.

22.     First, Debtor QAI did not receive adequate consideration for the transfers. Debtor QAI did not engage Defendant V&E. Debtor QAI did not receive work product from Defendant V&E. And Debtor QAI did not receive any other tangible benefit from the work performed by Defendant V&E. Yet Debtor QAI paid the bill.

23.     In addition, Debtor QAI's financial condition was deteriorating before the transfers begun. As outlined above in paragraph 10, Debtor QAI was unable to make payments on debts as they became due in February 2018.

24.     The transfers were also constructively fraudulent because Debtor QAI clearly received less than equivalent value, and in fact, *no value*. Defendant V&E provided services to Pareto for which QSI agreed to pay, yet Debtor QAI paid the bill. As a result, Debtor QAI received no value for the transfer.

25.     The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) because:

    A.  Debtor QAI made these transfers and received less than a reasonably equivalent value in exchange for such transfer or obligations, and in fact, received no value;

B. Debtor QAI was insolvent on the date each such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation; and

C. Debtor QAI was not personally liable for the debts satisfied by the Avoidable Transfers.

26.     Under 11 U.S.C. § 550(a), the Trustee may recover the value of the Avoidable Transfers from "the initial transferee of such transfer of the entity for whose benefit such transfer was made." Defendant V&E was the initial transferee of the Avoidable Transfers. In the alternative, Defendant V&E was the entity for whose benefit such transfers were made. Therefore, the Trustee is entitled to avoid and recover the value of the Avoidable Transfers from Defendant.

## COUNT 2
### ALTERNATIVE RELIEF: AVOIDANCE OF PREFERENCE PAYMENTS
### PURSUANT TO 11 U.S.C. § 547(b)

27.     Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

28.     In the event these transfers are considered debts or obligations of QAI, such transfers amounted to preference payments.

29.     The payments identified in the table below ("Preference Payments") constitute transfers of an interest in property of Debtor QAI, made to or for the benefit of Defendant V&E. Specifically, Debtor QAI made payments for the benefit of Defendant V&E by way of electronic payments, as can be seen in the table below, at a time when Debtor QAI was insolvent.

| Payment Date | Payment To | Payment Amount |
|---|---|---|
| 3/12/2020 | V&E | $25,000.00 |
| 4/3/2020 | V&E | $11,000.00 |
| | Total: | $36,000.00 |

30.     Payments made in the 90 days before the Petition Date amount to $36,000.00.

31.     The Trustee conducted an evaluation of the reasonably known affirmative defenses to avoidance of the Transfers under the circumstances of this case, and the Trustee determined he may avoid the transfers even after considering any potential statutory defenses under § 547(c). The Trustee reviewed the accounting records available to him and was unable to identify any new value.

32.     As a result, $36,000.00 are preference payments and should be avoided.

**COUNT 3**
**TEXAS UNIFORM FRAUDULENT TRANSFERS ACT**

33.     Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

34.     The Avoidable Transfers are avoidable as fraudulent transfers under TEX. BUS. & COM. CODE ANN. § 24.001, *et. seq.* ("Texas Uniform Fraudulent Transfer Act" or "TUFTA"), which the Trustee incorporates pursuant to 11 U.S.C. § 544(b)(1).

35.     One or more creditors exist whose claims arose before some of the Avoidable Transfers for whom the Trustee can act.

36.     Debtor QAI made the Avoidable Transfers for the benefit of QSI and/or Defendant V&E with the actual intent to hinder, delay, or defraud one or more of its true creditors. These transfers exhibit badges of fraud. The Trustee incorporates by reference the facts set forth in paragraphs 13-19, *supra*, setting forth the facts supporting a finding that Debtor QAI had actual intent to hinder, delay, or defraud. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), and the Trustee may avoid and recover the Avoidable Transfers from Defendant V&E.

37.     Debtor QAI made the Avoidable Transfers to Defendant V&E without receiving reasonably equivalent value in exchange for the Transfers. Additionally, when Debtor QAI made

the Avoidable Transfers for the benefit of Defendant V&E, it (1) was engaged or was about to engage in a business or transaction for which the remaining assets of Debtor QAI were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that Debtor QAI would incur, debts beyond its ability to pay as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(2), and the Trustee may avoid and recover the Avoidable Transfers from Defendant V&E.

38.     Debtor QAI made the Avoidable Transfers to the transferees for the benefit of Defendant V&E and QSI (1) without receiving reasonably equivalent value in exchange for the Avoidable Transfers, and (2) Debtor QAI either was insolvent when it made the Avoidable Transfers, or it became insolvent, partially as a result of the Avoidable Transfers. At the time of the Avoidable Transfers, (1) Debtor QAI's debts exceeded the fair valuation of all of its assets, and (2) Debtor QAI was generally not paying its debts as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.006(a), and the Trustee may avoid and recover the Avoidable Transfers.

39.     Because the Avoidable Transfers were fraudulent under TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1) and (2) and 24.006(a), the Trustee may avoid the Avoidable Transfers to Defendant RSM under TEX. BUS. & COM. CODE ANN. § 24.008. Pursuant to 11 U.S.C. § 550(a) and TEX. BUS. & COM. CODE ANN. § 24.008, the Trustee may recover from Defendant V&E the value of the Avoidable Transfers.

### CONSTRUCTIVE TRUST

40.     Once an entity becomes insolvent and can no longer continue normal business operations, its assets become a trust fund for the benefit of all creditors. *Tigrett v. Pointer*, 580

S.W.2d 375, 383 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). Any assets that are transferred to or for the benefit of an officer, director, or owner are held in a constructive trust. *Southwest Livestock & Trading Co. v. Dooley*, 884 S.W.2d 443,444 (Tex. App.—San Antonio 1994, writ denied); *Donovan v. Rankin*, 768 S.W.2d 443, 444 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The Trustee requests that a constructive trust be imposed against all Avoidable Transfers made to Defendant V&E.

## TURNOVER OF PAYMENTS UNDER 11 U.S.C. § 542

41.     All the Avoidable Transfers made to Defendant V&E are property of the Bankruptcy Estate. The Avoidable Transfers are in a known amount. The Trustee seeks a judgment requiring the turnover of all Avoidable Transfers and all proceeds derived therefrom pursuant to 11 U.S.C. § 542.

## ATTORNEYS' FEES

42.     The Trustee requests an award of his reasonable attorneys' fees and costs pursuant to TEX. BUS. & COM. CODE ANN. § 24.013 and all other applicable law.

## PRE- AND POST-JUDGMENT INTEREST

43.     The Trustee seeks pre- and post-judgment interest on his recovery at the maximum amount allowable by law.

## PRAYER

44.     Accordingly, the Trustee requests the entry of a judgment against Defendant Vinson & Elkins LLP consistent with the above-stated causes of action, including all actual damages, turnover, the imposition of a constructive trust, attorneys' fees and costs, pre- and post-judgment interest, and all such other and further relief to which the Trustee may be justly entitled.

Dated: May 23, 2022          Respectfully submitted

                            McDOWELL HETHERINGTON LLP

                            By:  */s/Nicholas R. Lawson*
                            Nicholas R. Lawson
                            Texas Bar No. 24083367
                            Avi Moshenberg
                            Texas Bar No. 24083532
                            Matthew Caldwell
                            Texas Bar No. 24107722
                            McDowell Hetherington LLP
                            1001 Fannin Street, Suite 2700
                            Houston, TX 77002
                            P: 713-337-5580
                            F: 713-337-8850
                            E: Nick.Lawson@mhllp.com
                               Avi.Moshenberg@mhllp.com
                               Matthew.Caldwell@mhllp.com

                            ***COUNSEL FOR CHRISTOPHER R. MURRAY,***
                            ***CHAPTER 7 TRUSTEE***